**HEINER, Collector of Internal Revenue, v. DONNAN et al.**

No. 4704.

Circuit Court of Appeals, Third Circuit.

Aug. 25, 1932.

See, also (D. C.) 48 F.(2d) 1058.

Louis E. Graham, U. S. Atty., and John A. McCann, both of Pittsburgh, Pa., and William T. Sabine, Sp. Atty., Bureau of Internal Revenue, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C., for appellant.

Wm. G. Heiner, of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the representatives of the estate of John W. Donnan brought suit against the collector of internal revenue to collect taxes alleged to have been unjustly assessed and paid under protest. Trial by jury was waived by stipulation of record. So far as material to the issue before us, the trial judge found the facts in reference to two advancements made to his two sons and a trust settlement in favor of all his children, as follows:

"XXIII. The motive which induced and impelled the decedent to advance the amounts of $5,000 and $32,500 to his two sons was the gratification of a desire to provide them with the means to purchase residential properties for themselves during his lifetime.

"XXIV. The decedent did not make the advancements of $5,000 and $32,500 to his two sons in contemplation of death.

"XXV. The trust indenture dated March 1, 1927, was a complete and irrevocable gift from the decedent to his four children during the lifetime of the decedent.

"XXVI. The decedent was not induced, or impelled to make the trust indenture of March 1, 1927, by a contemplation of death arising from any bodily or mental condition."

"XXX. One of the motives which induced and impelled the decedent to make the trust indenture of March 1, 1927, was the gratification of a desire to fulfil a moral obligation to equalize his bounty among his four children, by the correction of a habit of discriminating financially against his three sons in favor of his daughter.

"XXXI. One of the motives which induced and impelled the decedent to make the trust indenture of March 1, 1927, was the gratification of a desire to continue a policy, begun in 1911, of making liberal gifts to his children during his lifetime, he being a widower and financially able to make such gifts.

"XXXII. One of the motives which induced and impelled the decedent to make the trust indenture of March 1, 1927, was the gratification of a desire to give his children additional financial responsibilities and to see how they would manage this particular trust under his advice, he being satisfied

and pleased with the way they had handled two former trust gifts.

"XXXIII. One of the motives which induced and impelled the decedent to make the trust indenture of March 1, 1927, was the gratification of a desire to see and have all his children, with their families, independently established with competencies of their own during his lifetime.

"XXXIV. The decedent did not make the trust indenture dated March 1, 1927, in contemplation of death.

"XXXV. One of the motives which induced and impelled the decedent to make the trust indenture of March 1, 1927, was his interest and belief in trusts generally and his desire to be an example in his own affairs and build up the trust department of the bank which was then only in its infancy.

"XXXVI. John W. Donnan, in making the transfers of property hereinbefore mentioned, had no motive of making a distribution of such property as at death, but desired to attain objects sought by him in his lifetime."

Where trial by jury is waived, the findings of fact by the trial judge are conclusive on this court if there was evidence to warrant such finding. The court having affirmatively found the instruments here involved were not made in contemplation of death, the case resolves itself into the question whether there was evidence to support such finding. Without therefore discussing the cases and statutes set forth in both briefs, we confine ourselves to the controlling question whether there was evidence to support the finding of the trial judge. We are of opinion there was, and we base such holding on these facts and considerations:

John W. Donnan died December 23, 1928, at the age of eighty-three years. The immediate cause of his death was an attack of flu-pneumonia, of which there was an epidemic in his locality and which caused his death after two weeks' illness.

Taking up the adverse elements, so to speak, we inquire, first, as to what physical ailments he had during the period of twenty years prior to his death. The proofs show that in 1919–20, he had a hemorrhage in the throat and was confined to bed in a hospital for a week or so. This hemorrhage was caused by wrenching due to vomiting something he had eaten. He fully recovered therefrom. In 1924 he was examined and treated for hives and for the same ailment in 1926. He overcame that trouble by the use of sauerkraut juice. He wore glasses and did not attend moving pictures because they hurt his eyes. During the latter years of his life, his hearing was not as acute as formerly. He took treatments to keep his ears clear and improve his hearing. During the last two or three years of his life his weight decreased from 160 to 150 pounds.

As against this we have positive evidence of his uniform good health, cheerfulness, and expectation of life. He was never confined to bed by sickness a day in his life except the one week above referred to when he was in the hospital. Up to within three days of his death his heart was strong, his arteries soft, and his other vital organs normal. His appetite was good and he enjoyed three meals a day. Save on one occasion, and that lasting only for a couple of weeks, when he had raw eggs for breakfast, he never was on a diet during his life. He used no medicines except the common ones of soda, calomel, cream of tartar, and laxatives. He was a regular and ardent horseback rider until within a year and a half of his death. He was a persistent and regular worker. He was an early riser, went to work at 8:30 in the morning, and continued until after banking hours. He enjoyed reading, music, flowers, the theater, motoring, traveling, whist, and outdoor walking, all up to the very time of his death. He made several trips to Europe during his later years, and in the fall of 1927 took a 2,200-mile automobile trip to the White Mountains. The same summer, when he was in his eighty-third year, he walked twice daily from the Traymore Hotel at Atlantic City to the Hygeia Pool and the Steel Pier and return, a distance of several miles, and also bathed in the surf every day. He made frequent trips to New York City, an overnight ride of nearly 500 miles from his home. During the latter years of his life, this trip was made every month, often alone and unattended. He was happy, cheerful, contented; enjoyed life with his family. When examined in the sanitarium, where he went for treatment of the hives in 1926, the doctor found him in excellent health and told him he would not have to follow any special course of living, but probably would have to take calomel when he was about ninety years of age. His constitution was so strong that even three days before his death a consulting physician, called in from Pittsburgh, told members of his family that on account of his excellent heart and soft arteries he had a good chance to win his fight.

In 1926 his son was made vice president of the bank of which he was president, and

at that time he told a friend that he did not intend to retire until he was ninety years old and then he would allow his son to run the bank. His mental faculties were most vigorous up to the time of his death. He was the dominating factor in the active management and control of a large national bank. He approved or disapproved all considerable loans; he bought and sold the bank's bonds. At the time of his death he was planning to make certain changes in the capital stock structure of his bank. He was deeply interested in the advancement of its trust department. His mother and sister had lived beyond eighty years of age and he frequently told his friends, relatives, and business associates that he expected to live to be ninety.

In view of our case of Commissioner v. Nevin (C. C. A.) 47 F.(2d) 478 (certiorari denied by Supreme Court), and U. S. v. Wells, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867, we are of opinion that the trial judge had an abundance of evidence from which he would find that the instruments in question were not made in contemplation of death.